UNITED STATES DISTRICT COURT FOR

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PMG HOLDING SRL | CIVIL ACTION |
| *Plaintiff* | NO. 2:23-cv-00623 |
| VERSUS | **ADMIRALTY** |
| | SECTION "L" |
| M/V ARGOS M, her engines, machinery, boilers, tackle, etc., *in rem* | (Judge Eldon E. Fallon) |
| | MAG. (5) |
| *Defendants* | (Magistrate Judge Michael B. North) |

### MEMORANDUM OF PMG HOLDING SRL IN SUPPORT OF ITS MOTION FOR INTERLOCUTORY SALE OF THE M/V ARGOS M

*MAY IT PLEASE THE COURT*:

Plaintiff PMG Holding SRL's ("PMG Holding") respectfully submits this memorandum in support of its Motion for Interlocutory Sale of the M/V ARGOS M pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture of Actions Rule E(9).

On February 22, 2023, a warrant of vessel arrest was served upon the master of the M/V ARGOS M at Nashville Avenue wharf. Since the service of the warrant, no claim of ownership has been filed. Nor has security been posted to release the vessel. *Custodia legis* expenses are accruing at an excessive and disproportionate rate due to the failure of the vessel owner to seek release of the M/V ARGOS M. For those reasons and the others more fully set forth below, this motion should be granted.

### Facts.

On February 17, 2023, PMG Holding filed its Verified Complaint seeking to enforce a maritime lien in its favor against the M/V ARGOS M arising from the supply and delivery of

approximately 250 MT of Intermediate Fuel Oil to the vessel.[1]   In conjunction with the complaint, PMG Holding also filed a Motion for Admiralty Arrest of the M/V ARGOS M upon her port call in the Port of New Orleans.[2]   The Court subsequently granted the motion for arrest deputizing Alan Swimmer of National Maritime Services, Inc. to execute and serve the warrant of vessel arrest.[3] The Court also granted PMG Holding's motion appointing National Maritime Services, Inc. as the substitute custodian of the vessel.[4]   On February 22, 2023, Mr. Swimmer served the warrant of vessel arrest upon the master of the M/V ARGOS M at Nashville Avenue wharf.[5]   The M/V ARGOS M, an ocean-going bulk carrier ladened with cargo, currently remains in the custody of the substitute custodian and has moved to Southwest Pass Anchorage within this judicial district.[6]

**Related Case.**

Civil Action No. 23-cv-00595 entitled *Three Fifty Markets Ltd. v. M/V ARGOS M, her engines, tackle, equipment, appurtenances, etc, in rem* is also presently pending before this Court.[7] In that case, plaintiff Three Fifty Markets Ltd. filed a verified complaint to enforce a maritime lien against the M/V ARGOS M.[8]   On March 8, 2023, Three Fifty Markets Ltd. filed a Motion for Interlocutory Sale of the vessel.[9]   The Court subsequently granted Three Fifty Markets Ltd.'s

---

[1] R. Doc. 1.
[2] R. Doc. 4.
[3] R. Docs. 11, and 10.
[4] R. Doc. 13.
[5] R. Doc. 18.
[6] The vessel was permitted to move from Nashville Avenue to anchorage to mitigate custodial costs. Plaintiff herein PMG Holdings is sharing *custodia legis* costs with the plaintiff in the related case described herein.
[7] Civil Action No. 23-cv-00595, R. Doc.1.
[8] *Id*.
[9] Civil Action No. 23-cv-00595, R. Doc. 15.

motion for expedited hearing on its Motion for Interlocutory Sale which is now set for submission

on March 22, 2023 at 9:00 a.m.[10]

### Law and Argument.

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture of Actions

Rule E(9) states in pertinent part:

> **(a) Interlocutory Sales; Delivery.**
>   (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold – with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further order of the court – if:
>     (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>     (B) the expense of keeping the property is excessive or disproportionate; or
>     (C) there is an unreasonable delay in securing the release of the property.
>
> \*   \*   \*   \*   \*
>
> **(b) Sales, Proceeds.** All sales of property shall be made by the marshal or a deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interests; and the proceeds of sale shall be forthwith paid into the registry of the court to be disposed of according to law.

To prevail, a lien holder need only show one of the three Rule E(9)(a)(i) criteria.[11]  In *Merchants*

*National Bank of Mobile*, the Fifth Circuit determined that the interlocutory sale of a couple of

vessels was justifiable when (1) expert evidence suggested that if the vessels were to lay idly

---

[10] Civil Action No. 23-cv-00595, R. Doc. 17.
[11] *Essex Crane Rental Corp. v. DB Crossmar 14*, 2016 WL 5869790 *4 (E.D. La. 2016) (citing *Bollinger Quick Repair, LLC v. Le Pelican MV*, No. 00-308, 2000 WL 798497, *2 (E.D. La. June 20, 2000) (citing *Merchs. Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338 (5th Cir. 1981)).

without routine maintenance, the engine(s) might rust and freeze up, the electric equipment was susceptible to corrosion, rust, and general deterioration, and the hulls and superstructures were subject to rusting; (2) the costs attributable to the vessels exceeded $17,000 per month, all of which was paid by the lienholders "with uncertain hope of reimbursement"; and (3) the vessel owners "never posted bond, entered into any stipulation, or otherwise attempted to secure the release of the vessels pursuant to Rule E(5).[12]

### The sale of the M/V ARGOS M is appropriate under Rule E(9).

There have been no attempts to secure the release of the vessel from arrest by her owners. As of the filing of this motion, no claim of possession or ownership in the vessel has been filed in this action despite the vessel's arrest over three weeks ago.

Due to the abandonment of the M/V ARGOS M including her cargo and crew by vessel owners, *custodia legis* expenses are accruing at an excessive rate. According to the Declaration of Alan Swimmer of National Maritime Services, Inc. (the substitute custodian), custodial costs are accruing daily with $43,876.06 incurred to date.[13] It is presently expected that the ship will run out of fuel by the end of March 2023 and potable water for the crew by mid-April 2023.[14] Expenses to resupply the Vessel with fuel, potable water, food and provisions to maintain power and sustain the crew are estimated to exceed $100,000.[15] Mr. Swimmer is presently making arrangements to deliver fuel, potable water, provisions and stores to the vessel which costs will be borne by the lien holders.[16] After the initial resupply of fuel, potable water, provisions and stores

---

[12] *Id*. (citing *Merchs. Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1342 (5th Cir. 1981).

[13] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 7.

[14] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶¶ 8 and 10.

[15] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 14.

[16] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 13.

to the vessel, Mr. Swimmer estimates that monthly *custodia legis* expenses to supply and maintain the vessel with fuel and provisions to be approximately $137,000.[17]  Mr. Swimmer also projects that additional custodial costs may be incurred to safeguard the vessel from the risks associated with hurricane season.[18]

In addition, the M/V ARGOS M's officers have not been paid their February wages[19]  and crew stranded aboard the Vessel.  The immediate sale of the vessel will allow for the payment of crew wages and for the new owner to man the vessel relieving the existing crew of their duties so that they may be repatriated and return home.

The unreasonable delays in seeking release of the vessel by her owners may also increase expenses with respect to the cargo aboard the vessel.  Undersigned counsel has been recently contacted by counsel for cargo interests who indicated that a demand for cargo discharge and an intervention into this action may be forthcoming.  In such a case, according to the declaration of Mr. Swimmer, the vessel likely will have to be moved to an appropriate Mississippi River terminal to facilitate cargo discharge.[20]  The transiting cost alone to move the vessel is estimated to be approximately $20,000.[21]  The estimate does not include fuel, surveying and cargo supervisory expenses.

It is respectfully submitted that should the Court grant this motion, PMG Holding will act diligently and in conjunction with the plaintiff in the related case, to make necessary arrangements with the U.S. Marshal's Service to schedule a date for the sale of the Vessel.

---

[17] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 15.
[18] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 16.
[19] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 12.
[20] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 17.
[21] See **Exhibit "A"**, Declaration of Alan Swimmer at ¶ 17.

PMG Holding proposes to have National Maritime Services, Inc. assist in brokering the sale and advertising the sale over a 14-day period.  PMG Holding further proposes that the Court set a minimum sale price of **$6,500,000.00**, 80% of the liquidated value as estimated by Compass Maritime Services.  Attached as **Exhibit "B"** is the Independent Valuation Report from Compass Maritime Services dated March 7, 2023.  Proceeds from the vessel's interlocutory sale will be deposited into the registry of the Court in substitute for the Vessel *in rem*.  The proceeds from the sale of the vessel will provide, among other things, for payment of interest, contractual attorneys' fees, payment of crew wages, repatriation expenses, and *custodia legis* expenses.

### Conclusion.

The criteria for the sale of the M/V ARGOS M under Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture of Actions Rule E(9) exists.  The vessel has effectively been abandoned by her owners as evidenced by the failure to seek release of the vessel from arrest as well as the failure by the vessel owner to pay crew wages.  Moreover, *custodia legis* expenses are accruing at an excessive and disproportionate rate of well over $100,000 a month, which is prejudicial to the plaintiff and justifies an immediate sale of the vessel.  Accordingly, this Motion for Interlocutory Sale of the M/V ARGOS M should be granted.

Respectfully submitted,

BROOKS GELPI HAASÉ, L.L.C.

*/s/ Philip S. Brooks, Jr.*

_____

PHILIP S. BROOKS, JR. (#21501)
RONALD J. KITTO (#28638)
909 Poydras Street, Suite 2325
New Orleans, LA 70112
Telephone:     (504) 224-6723
Facsimile:     (504) 534-3170
E-mail:        pbrooks@brooksgelpi.com

-6-

rkitto@brooksgelpi.com

*Attorneys for Plaintiff, PMG Holding SRL*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2023, the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all attorneys of record.

*/s/ Philip S. Brooks, Jr.*

_____

PHILIP S. BROOKS, JR. (#21501)
Brooks Gelpi Haasé, L.L.C.
909 Poydras Street, Suite 2325
New Orleans, LA 70112
Telephone:      (504) 224-6723
Facsimile:      (504) 534-3170
E-mail:         pbrooks@brooksgelpi.com

*Attorneys for Plaintiff, PMG Holding SRL*