UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THREE FIFTY MARKETS LTD.** | * | CASE NO. 2:23-cv-00595 |
| | * | c/w  2:23-cv-00623 |
| | * | |
| **VERSUS** | * | JUDGE ELDON E. FALLON |
| | * | |
| **M/V ARGOS M, her engines, tackle,** | * | MAGISTRATE JUDGE NORTH |
| **equipment, appurtenances, etc.,** *in rem* | * | |
| | * | |

******************************************

### MEMORANDUM IN OPPOSITION TO MOTIONS FOR <u>INTERLOCUTORY SALE OF VESSEL [R. DOCS. 15 AND 19]</u>

**MAY IT PLEASE THE COURT:**

Argos Bulkers, Inc. ("Argos"), solely as owner and claimant of the M/V ARGOS M, subject to its restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"), files this Opposition to the Motions for Interlocutory Sale of Vessel filed by plaintiff in CA No. 23-595, Three Fifty Markets Ltd. ("Three Fifty") [R. Doc.  15]  and plaintiff in CA No. 23-623, PMG Holding SRL ("PMG") [R. Doc.  19] (collectively "Plaintiffs").

Plaintiffs fail to carry their burden of proving the necessary critical elements to support an interlocutory sale of the M/V ARGOS M (the "Vessel") under Rule E(9) of the Supplemental Admiralty Rules. Plaintiffs have failed to prove that the Vessel is perishable or subject to deterioration, decay, or injury. In fact, the vessel has a full crew onboard maintaining it and protecting it from deterioration or damage. Nor have Plaintiffs proven that the expense of

1

maintaining the Vessel under arrest is excessive. In fact, these costs are minor compared to the market value of the Vessel, which is around $10 million. And finally, there has been no unreasonable delay. It has been just under a month since the Vessel was first arrested on or about 22 February 2023, and Argos has been actively working to obtain the financing necessary to secure the Vessel's release and/or encourage the charterer to resolve these claims for bunkers reportedly stemmed for charterer's account, all during a European banking crisis that has profoundly impacted business activities worldwide. Since none of the prerequisites which allow an interlocutory sale of a vessel are present in this case, Plaintiffs' Motions for Interlocutory Sale of Vessel should therefore be denied.

## Law and Argument

Rule E(9)(a) of the Supplemental Admiralty Rules provides for the interlocutory sale of seized property as follows:

> (i) On application of a party, the marshal, or other person having custody of the property, the court *may* order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> > (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> >
> > (B) the expense of keeping the property is excessive or disproportionate; or
> >
> > (C) there is an unreasonable delay in securing release of the property.
>
> (ii) In the circumstances described in Rule E(9)(a)(i), the court, on motion by a defendant or a person filing a statement of interest or right under Rule C(6), may order that the property, rather than being sold, be delivered to the movant upon giving security under

these rules. [Emphasis added.]

The movant has the burden of proof and must "demonstrate that at least one of the [three] conditions listed in Rule E(9)(b) [now E(9)(a)] is present before the sale of the vessel will be ordered." *Triton Container Int'l v. Baltic Shipping Co.*, 1995 U.S. Dist. LEXIS 4856, at *4 (E.D. La. Apr. 11, 1995) (Sear, J.). But "[e]ven if they meet this burden, the Rule, by using the word 'may', clearly indicates that ordering the sale is not mandatory." *Id.* As explained by the Seventh Circuit, "[b]ecause the rule does not state any criteria to guide the judge … the judge can range widely in deciding what factors to consider … [I]n other words, [the judge] has considerable discretion." *United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) (affirming the district court's exercise of discretion in denying a motion for interlocutory sale under the identical wording of Supplemental Rule G).

Plaintiffs cannot establish any grounds for an interlocutory sale under Rule E(9), but in any event, this Court should decline to sell the M/V ARGOS M at this time for equitable reasons.

### A. The Vessel is not perishable, or liable to deterioration, decay, or injury

Plaintiffs have failed to show that the Vessel itself is perishable or subject to deterioration, decay, or injury in any way. Plaintiffs make the unsupported and conclusory allegation that "[b]y definition, the Vessel is perishable: ships corrode, machinery deteriorates, and vessels sink when their owner abandons them, which is the case." [R. Doc. 15-1, p. 2]. But the Vessel has a full crew onboard performing all necessary maintenance and protecting the vessel from weather conditions and maritime perils. In this regard, a third-party inspection could be arranged to verify that the vessel remains in good order and condition and is not deteriorating. Indeed, throughout their life, vessels oftentimes spend significantly greater periods idle for

3

commercial reasons. And the Vessel can be moved to a safe berth inland if the threat of a hurricane becomes an actual reality.[1] Also, Argos is working to obtain financing to secure the Vessel's release from arrest with plans to put the Vessel back into commercial use.[2]

An interlocutory sale cannot be ordered solely on speculation and conjecture. But that is all Plaintiffs have offered here. They have failed to offer any *evidence* that the Vessel is perishable or subject to deterioration or decay or injury as required by Rule E(9)(a)(i)(A). To the contrary, because the crew is still onboard actively caring for the Vessel, the opposite is true. As such, Plaintiffs have failed to carry their burden of proving grounds for an interlocutory sale under Rule E(9)(a)(i)(A).

      **B.**      **The expense of keeping the Vessel is not excessive or disproportionate**

As it relates to Rule E(9)(a)(i)(B), Plaintiffs bear the burden of proving that the cost of maintaining the Vessel under arrest is excessive or disproportionate. *Gyasi v. M/V "Andre"*, 2008 U.S. Dist. LEXIS 30279 (S.D. Fla. Apr. 1, 2008). Plaintiffs have claimed $43,876.06 in joint *custodia legis* expenses since the arrest of the Vessel, consisting of substitute custodian charges, launch fees, flights for Mr. Swimmer to travel from Fort Lauderdale to New Orleans for three days (no reason provided), alleged increased expenses / fees based on the number of crew aboard, Mr. Swimmer's Uber and taxi expenses to go back home, his airport parking and lots of mileage, as well as six $74.00 meals as of 15 March 2023 [R. Doc. 19-2, p. 4]. But plaintiffs have not submitted any invoices to substantiate the underlying charges. Moreover, these are all

---

[1] Exhibit A, ¶16, Declaration of Nikos Kekridis. Perhaps New York counsel is unaware, but the Atlantic hurricane season is generally considered to be 1 June – 30 November. See generally, *National Hurricane Center and Central Pacific Hurricane Center,* https://www.nhc.noaa.gov/ (last accessed March 20, 2023).
[2] Exhibit A, ¶¶9-10.

expenses that have *already been incurred* and will not be reduced or avoided by an early sale of the Vessel. These are costs that are inherent in Plaintiffs exercising the extraordinary remedy under the Supplemental Admiralty Rules of seizing the Vessel.

Such past costs are not directly relevant to whether the Court should order an interlocutory sale under Rule E(9)(a)(i)(B). These past expenses—even if supported by evidence—do not and cannot support a finding that the costs to maintain the Vessel under arrest are excessive. As one court has stated:

> The plaintiff represents that it expended approximately $193,000 to have the Equipment removed from the vessel and placed in storage. Counting Marshal's fees and fees of the substitute custodian, the plaintiff states it has spent over $210,000 through December 31. Going forward (indeed, beginning September 2009), the monthly cost is a stable $5,092.
>
> The plaintiff does not explain the relevance of its sunk costs, incurred before it moved for interlocutory sale, in determining whether the expense is excessive or disproportionate. Certainly no order of sale can recoup the plaintiff's past expenditures. Absent authority or explanation, which the plaintiff does not provide, the <u>Court limits its consideration to the future expenses of keeping the property</u>.

*Adams Offshore, Ltd. v. Con-Dive, LLC*, 2010 U.S. Dist. LEXIS 7922, at *3-4 (S.D. Ala. Feb. 1, 2010) (emphasis added) (denying sale of a saturation and diving system).

More relevant to this motion is the fact that Plaintiffs provide *no evidence* of what *future* expenses will be needed to maintain the Vessel while under arrest. They contend they remain responsible for paying the substitute custodian to maintain the Court's custody of the Vessel. But other than Mr. Swimmer's declaration that ludicrously suggests that monthly *custodia legis* expenses will somehow exceed $100,000 next month, and then inexplicably increase to over $137,000/mo. if the vessel is moved upriver, Plaintiffs fail to submit any viable proof of the

actual expenses that will be incurred in connection with maintaining the Vessel in custody will or may be going forward. Indeed, Plaintiffs and Swimmer specifically represented to the Court that Swimmer's cost to act as a custodian, including insurance, wharfage[3] and routine services were "only" $1,206.08 per day [R. Doc. 11, art. 4].[4] If Plaintiffs are now suggesting that those expenses are too low, those *custodia legis* expenses are *per se* unreasonable, and Plaintiffs should find and locate another more reasonable substitute custodian, such as the vessel's Master. In sum, Plaintiffs have failed to demonstrate that *future* seizure costs will be excessive, particularly when compared to the value of the claims asserted or the value of the Vessel.

Three Fifty's principal claim is for $629,600 [R. Doc. 1, art. 10], while PMG's principal claim is for roughly $218,000 [R. Doc. 1 (CA No. 23-623), art. 11]. In addition, they assert claims for contractual interest and penalties [R. Doc. 1, art.13; R. Doc. 1(CA 23-623), art. 11], although those remedies are not available against an *in rem* defendant that did not contract with the bunker suppliers directly.[5] The parties agree that the vessel is worth $10 Million, if not more as the market improves.[6] Argos disputes that Plaintiffs have valid maritime liens,[7] but the

---

[3] Since the Vessel is at anchorage, no wharfage has been incurred, despite Swimmer's custodial rate purporting to incorporate wharfage.
[4] See Exhibit A, ¶¶13-14 regarding actual costs of maintaining the vessel.
[5] *Sunrise Shipping v. M/V American Chemist,* No. Civ. A. 96–2849, 1999 WL 22857, at *1 (E.D. La. Jan. 19, 1999) (J. Berrigan). (the claimant should be allowed to "only collect prejudgment interest at the statutory rate" and not at the higher contractual rate that the claimant requested); *Gulf Marine & Ind. Supplies, Inc. v. M/V Golden Prince*, CIV. A. 99-156, 1999 WL 670997, at *4–5 (E.D. La. Aug. 25, 1999) (disallowing claims for contractual interest and attorney's fees); *see also J.P. Provos,* 1999 WL 558151 at *2 (E.D. La. July 28, 1999) (finding that "legal services for collection of a debt for necessaries are not for the benefit of the vessel, and thus they are not necessaries subject to a maritime lien"); *Inland Credit Corp.,* 552 F.2d at 1155 (affirming the district court's decision that two parties successfully asserting liens for necessaries could not receive attorney's fees *in rem* but could receive them *in personam*). See also Exhibit A, ¶¶ 3-7, 15, and Ex. 1 thereto.
[6] Exhibit A, ¶8.
[7] *See* Exhibit A, ¶¶3-7, 15.

claimed amounts total over $887,000 before adding the claims for alleged contractual penalties, interest, and fees.

In short, Plaintiffs have failed to show what the <u>future</u> *custodia legis* expenses, if any, will be, or that they will be excessive or disproportionate compared to the total claims exceeding $1,000,000, or the Vessel's US $10 million current market value.[8]

In *Boland Marine & Mfg. Co. v. M/V A.G. Navajo*, 2002 U.S. Dist. LEXIS 22737 (E.D. La. Nov. 22, 2002), the court specifically rejected the movant's argument that the cost of maintaining the vessel was excessive or disproportionate where the plaintiffs failed to show that the continuing daily costs were "excessive or disproportionate to the vessel's value." *Id.* at *10. Similarly, in *Louisiana International Marine v. The Drilling Rig Atlas Century*, 2011 WL 76337219 (S.D. Tex. November 21, 2011), the rig at issue was valued at $32 million. The plaintiff's claim was $859,100.00. The plaintiff spent $50,000.00 to detain the rig and anticipated monthly custodian costs of $18,000.00 to maintain the vessel under arrest. The court noted that although these costs could become substantial over time, the custodian costs to date were only 12% of plaintiff's claim and 2% of the Rig's value. Accordingly, the court found that the custodian costs were not excessive or disproportional. And in *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2010 U.S. Dist. LEXIS 7922, at *4 (S.D. Ala. Feb. 1, 2010), the court denied the interlocutory sale of a saturation and diving system "given the plaintiff's admission that even the forced liquidation value of the Equipment is at least $2,500,000, expenses of $51,000 (or barely 2%) cannot easily be called disproportionate, and the plaintiff identifies no authority supporting a contrary conclusion."

---

[8] Exhibit A, ¶8.

It is difficult to envision any future *custodia legis* expenses for the Vessel coming even close to being considered disproportionate to its $10 million value. As an example, the $44,000 in previously incurred *custodia legis* expenses (most of which were unnecessary) represents 0.0044% of the Vessel's value. This certainly is not a case where lienholders continue to incur *custodia legis* expenses "with uncertain hope of reimbursement." *Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie,* 663 F.2d 1338, 1342 (5th Cir. 1981). Thus, even if Plaintiffs face significant *custodia legis* expenses over the next several months, which they have not shown that they actually will incur, they undoubtedly will recover those sums if the Vessel must be sold in the future.

Ultimately, Plaintiffs have failed to prove that the expense of keeping the Vessel is excessive or disproportionate as required by Rule E(9)(a)(i)(B).

**C.      There has not been an unreasonable delay in securing release of the Vessel**

The Vessel was first arrested on 22 February 2023. Tellingly, Plaintiffs cannot contend that a delay in securing release of the Vessel in less than 1 month is somehow unreasonable. Any such contention would lack merit. "The parties do not cite, and this Court cannot find, a case in which a court found a delay of less than three and a half months to be unreasonable." *Samsun Logix Corp. v. Parkroad Corp.*, 2009 U.S. Dist. LEXIS 7602, at *12 (W.D. La. Feb. 3, 2009). As another court put it, "[a] three month delay, without more, is insufficient to merit interlocutory sale under Supplemental Rule E(9)(b)." *Gyasi v. M/V "Andre"*, 2008 U.S. Dist. LEXIS 30279, at *5 (S.D. Fla. Apr. 1, 2008). "As a general rule, defendants are given at least four months to bond a vessel absent some other considerations." *John W. Stone Oil Distrib., L.L.C. v. M/V Lucy*, 2009 U.S. Dist. LEXIS 114086, at *2 (E.D. La. Nov. 20, 2009) (citing cases).

A review of cases decided on unreasonable delay in securing release of the property almost universally found that another factor under Rule E(9)(i) also was present. *See Merchants Nat'l Bank v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1342 (5th Cir. 1981); *John W. Stone Oil Distrib.*, *supra*; *Colonna's Shipyard, Inc. v. U.S.A.F. General Hoyt S. Vandenberg*, 584 F.Supp. 2d 862 (E.D. Va. 2008); *Ferrous Financial Services Co. v. O/S ARCTIC PRODUCER*, 567 F.Supp. 400 (W.D. Wa. 1983); *Neptune Orient Lines, Ltd. v. Halla Merchant Marine Co., Ltd.*, 1998 WL 128993, at *6 (E.D. La 1998). In other words, delay is not unreasonable when, as here, the vessel is not deteriorating, and the custodial costs are not excessive.

Moreover, contrary to the contentions of Plaintiffs, this is not a case where the vessel owner is making no effort to secure the vessel's release. *See, e.g., Merchants Nat. Bank of Mobile*, 663 F.2d at 1342 (affirming district court's determination of unreasonable delay where "[t]he owners of the vessels never posted bond, entered into any stipulation or otherwise attempted to secure the release of the vessels during the eight months after the seizure"); *Boland Marine & Mfg. Co. v. M/V A.G. Navajo*, *supra*, at *6-7; *Prosperity Bank v. Tom's Marine & Salvage, LLC,* 2020 U.S. Dist. LEXIS 26811, at *6 (E.D. La. Feb. 18, 2020). In contrast, where the vessel's owner took active measures to secure the release of the vessel, courts have found delay reasonable. *Boland Marine*, 2002 U.S. Dist. LEXIS 22737, at *6 (citing *Action Marine, Inc. v. M/V NORSEMAN*, 1997 U.S. Dist. LEXIS 5898, at *3 (E.D. La. Apr. 28, 1997)) and *Entron, Ltd. v. Crane Vessel Titan 2*, 1995 U.S. Lexis 6005, *8-9 (E.D. La. 1995)).

Nor is this a case where the Vessel's Owners are not properly manning and victualing the vessel, despite the blatant falsehoods stated as fact by Swimmer. Swimmer, although he is not on the vessel and has no personal knowledge of anything, nonetheless *under penalty of perjury*,

represented to the Court without attribution that there soon will be no fuel, food, or water on the vessel, and that the officers and crew had not been paid their February wages.[9] However, this is untrue: the Officers have been paid, along with all crew.[10] Moreover, as recently as 20 March 2023, the vessel's Master advised that the Vessel is adequately provisioned.[11]

In this matter, Argos is actively working to obtain the financing needed to secure the Vessel's release and/or resolve these claims.[12] It is talking to surety companies as well as well-known and reputable global banks, especially in Europe, and is actively exploring what shape or form the securities could be provided by each.[13] Argos believes in good faith that there is a good chance it will be able to post security once the company's latest financial results are provided.[14]

As the Court will appreciate, although Argos is working hard to secure the vessel's release, the uncertainties around the COVID-19 pandemic and the recent European banking crisis have made this endeavor more challenging.[15] Indeed, to provide adequate security for the fair market value is a challenge in today's environment with the nominal amount needed being rather high for anyone.[16]

Moreover, the global health and economic banking crisis will undoubtedly affect how much the M/V ARGOS M will sell for at a judicial auction if held in the near future. As such, ordering an early sale of the Vessel in the current economic crisis would be highly prejudicial to

---

[9] See R. Doc. 19-2, arts.8-12.
[10] See Exhibit A, ¶13 and Ex. 2 thereto.
[11] Exhibit A, ¶14, and Ex. 3 thereto.
[12] Exhibit A, ¶9.
[13] Exhibit A, ¶10.
[14] Id.
[15] Id.
[16] Id.

Argos. Indeed, Argos believes that as the global economy begins to recover, the M/V ARGOS M's value will increase in the foreseeable future.[17]

"A motion for interlocutory sale is not typically granted until enough time has passed to allow defendants to provide a bond to secure release of the vessel." *Bank of Rio Vista v. Vessel Captain Pete*, 2004 WL 2330704 (N.D. Ca. 2004). In this case, less than one month has elapsed since the arrest, the world economy has been in a crisis, and Argos is actively working to obtain security to lift this arrest. Plaintiffs have failed to prove unreasonable delay justifying an interlocutory sale under Rule E(9)(a)(i)(C), and its motion should therefore be denied.

In sum, Plaintiffs have failed to prove that any of the E(9)(a)(i) grounds for interlocutory sale exist in this case. But if nothing else, this Court should exercise its discretion and deny these motions for interlocutory sale and give Argos more time to try to secure the Vessel's release.

## Conclusion

In sum, Plaintiffs have failed to carry their burden of proving any of the grounds for an interlocutory sale of the Vessel under Supplemental Admiralty Rule E(9)(a). They have failed to show that the Vessel is perishable or at risk of deterioration, decay, or injury during this arrest. To the contrary, the Vessel is presently at a safe and secure location off the Louisiana coast near the Mississippi River with a crew onboard performing ordinary maintenance and protecting the Vessel from deterioration or damage.

Nor have Plaintiffs shown that future *custodia legis* costs will be excessive or disproportionate to the value of the claims asserted in this litigation or the value of the Vessel. Because the Vessel is worth far more than all potential *custodia legis* expenses, it is

---

[17] Exhibit A, ¶8.

uncontroverted that *custodia legis* costs can be satisfied with certainty if the Vessel must be sold at some point in the future.

Nor has Argos unreasonably delayed securing the Vessel's release. The arrest is less than one month old, and courts uniformly give vessel owners at least three and a half to four months or more to secure a vessel's release, particularly when, as here, a vessel's owner is actively working to secure its vessel's release. Given the current global health and economic crisis, Argos should be given more than the usual minimum time to try to secure the release of its vessel, i.e., about six months.

For all these reasons, Plaintiffs' Motions for Interlocutory Sale of Vessel [R. Docs. 15 and 19] should be denied.

Respectfully Submitted,

MURPHY, ROGERS, SLOSS,
  GAMBEL & TOMPKINS

*/s/ John H. Musser, V*
Peter B. Sloss (#17142)
psloss@mrsnola.com
John H. Musser, V (#22545)
jmusser@mrsnola.com
701 Poydras St., Suite 400
New Orleans, LA 70139
Phone: 504.523.0400
Fax:  504.523.5574

***Attorneys for Argos Bulkers, Inc., solely as owner and claimant of the M/V ARGOS M, with a full reservation of all rights and defenses pursuant to Supplemental Rule E(8) of the Federal Rules of Civil Procedure***