UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THREE FIFTY MARKETS LTD, <br><br> *Plaintiff*, <br><br> VERSUS <br><br> M/V ARGOS M, her engines, tackle equipment, appurtenances, etc. *in rem*, <br><br> *Defendant*, <br><br><br> PMG HOLDING SRL, <br><br> *Plaintiff*, <br><br> VERSUS <br><br> M/V ARGOS M, <br><br> *Defendant*. | CIVIL ACTION <br><br> NO. 2:23-cv-00595 <br><br> C/W NO. 2:23-cv-00623 <br><br> SECTION L (5) <br><br> JUDGE ELDON J. FALLON <br><br> MAGISTRATE JUDGE MICHAEL NORTH |

**THREE FIFTY MARKETS LTD.'s REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR INTERLOCUTORY SALE OF THE VESSEL (DOC. 15)**

Plaintiff Three Fifty Markets Ltd. arrested the M/V ARGOS M ("Vessel') on February 16, 2023, to recover the costs of bunkers, i.e., fuel, supplied to the Vessel.  Plaintiff, not having heard from the Owner, emailed the Vessel's P&I Club on February 23, 2023, advising of the Vessel's arrest. On March 8, 2023, Plaintiff, not having heard from any party interested in the Vessel or its cargo, filed a motion for the interlocutory sale of the Vessel.[1] (Doc. 15.) On March 16, 2023,

---

[1] Several hours after Three Fifty Markets filed its motion for an interlocutory sale of the vessel, Murphy, Rogers, Sloss & Gambel contacted counsel for Plaintiff and advised they would be acting for the Vessel's Owner.

consolidated plaintiff PMG Holding SRL likewise filed a motion for an interlocutory sale of the Vessel. On March 20, 2023, ArcelorMittal International (Luxembourg) S.A., ArcelorMittal (Costa Rica) S.A. moved to intervene claiming they owned cargo abord the Vessel. On March 21, 2023, Argos Bulkers, Inc. appeared in the action.

I. **Reply To Argos' Memorandum Opposing the Interlocutory Sale.**

    A.    Security must equal the Fair Market Value of the Vessel.

    1.    First and foremost, if the Court is inclined not to grant Plaintiffs' motions for an interlocutory sale of the Vessel, it should require Owner, pursuant to Rule E(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to post a bond for the full value of the Vessel, which Owner states is $10 million but in no event less than twice the amount of the claims pending plus interest, costs and attorney's fees, to account for any other claims that may exist against the Vessel. Plaintiffs are innocent suppliers of necessaires to the Vessel and should not shoulder the risk others file claims against the Vessel. The Court has great discretion, within that general confine, "in determining what constitutes appropriate security. *In re Clearsky Shipping Co.*, no. 96-4099, 1997 U.S. Dist. LEXIS 12355, 1997 WL 472663, at *2 (E.D. La. Aug. 18, 1997)." *Ergon - St. James, Inc. v. M/V Privocean*, No. 15-1121, 2015 U.S. Dist. LEXIS 174616, at *4 (E.D. La. Aug. 21, 2015)(Bond set at the sum of the fair market value of the vessel and her appurtenances at the time of arrest.) *Folkstone Mar., Ltd. v. CSX Corp.*, No. 88 C 4040, 1988 U.S. Dist. LEXIS 5018, at *6 (N.D. Ill. May 27, 1988)(Releasing a vessel on bond under Rule E(5)(a) results in the transfer of the maritime lien from the vessel to the fund represented by the security.); *United States v. Ohio Valley Company, Inc.,* 510 F.2d 1184, 1190 n. 13 (7th Cir. 1975)(The purpose of the bond is to substitute for the actual vessel. Thus, the

lien should be in an amount equal to the fair market value of the Vessel as she presently exists in the custody of the Court.)

2. Owner offered a bond from United States Fire Insurance Company ("US Fire"), a surety company, licensed to do business in Louisiana for $775,000. Plaintiff has concerns with the bond. First, US Fire has a single "a" rating, there presently a banking crisis (which the owner's invoked as a basis for their delay in making an appearance) and there has been recent write-offs associated with bonds in general. Further, sureties and insurer in Louisiana and nationwide are facing solvency issues. Plaintiff prefers an LOU from the P&I Club.

B. <u>The Kekridis Declaration is Unreliable</u>.

3. The Declaration of Mr. Kekridis submitted in support of Owner's memorandum opposing the interlocutory sale of the Vessel is unreliable for the following reasons:

 a. Kekridis argues in paragraph 4 that Three Fifty's Order Confirmation did not provide its General Terms & Conditions. *See*, **R. Doc. 28-1** at p. 2. However, in its Answer, Owners do not dispute they received the Bunker Confirmation *ad concedes* that Term "b" of the Bunker Confirmation provides (**R. Doc. 26** at pp. 2-3):

 > Please note that Three Fifty Market Ltd's General Terms and Conditions of Sale ("GTCS") will apply to this contract, *a copy of which is available on request.* Where Three Fifty Markers Ltd is not the Physical Suppliers, the terms of the Physical Suppliers are available on request. Failure to request the terms & conditions of the physical supplier shall be taken as confirmation by the Buyers that it is aware of an accepts the terms and conditions of the Physical Supplier.

 b. In paragraph 7, Kekridis argues that AUM was not the charterer of the vessel and thus had no authority to bind the Vessel to any contract. Not true. First, Exhibit A-1 to the Kekridis Declaration is not a complete document. *See*, **R. Doc. 28-1** at pp.

3

6-14. The email notes (on Page 6) there were attachments to the correspondence.[2] Second, the email indicates the Owner demanded AUM provide a BIMCO guarantee letter.[3] Third, on page 10 of Exhibit A-1 (**R. Doc. 28-1** at p.10), Owners were advised that "… AUM and Shimsupa is sister companies," and had the same beneficial owner.[4] Fourth, Owner demanded to know who the P&I Club was for both AUM and Shimsupa. In short, Owner knew AUM had authority to bind the Vessel on behalf of the time charterer Shimsupa.

c. Lastly, Kekridis states in paragraph 13 of his declaration that the entire crew was paid and in support of his statement refers to a wage account statement which does not show actual payment.[5] *See*, **R. Doc. 28-1** at p. 4.

C. Three Fifty has a valid and enforceable maritime lien.

4. Three Fifty Markets, Ltd. has a valid maritime lien. The allegations in the Complaint and Exhibits attached thereto are incorporated herein.

5. First, as noted in *ING Bank, N.V. v. M/V Charana Naree*, 446 F. Supp. 3d 163, 172-73 (W.D. La. 2020):

> the "statutory presumption in favor of a maritime lien is a strong one," and courts "are usually reluctant to conclude that a supplier has waived its lien." *M/V Bourbon Petrel*, 2015 U.S. Dist. LEXIS 63929, 2018 WL 6104718, at *5 (quoting *Maritrend, Inc. v. Serac & Co. (Shipping) Ltd.*, 348 F.3d 469, 471 (5th Cir. 2003)). As long as the supplier relied on the credit of the vessel to some extent,

---

[2] Pursuant to FRE 106, and so the Court would have a complete picture of the fats of this matter as it relates to who had authority to order bunkers for the Vessel, we requested copies of the attachments from Owner's counsel, who refused to produce the requested documents. A copy of the email exchanges with Owner's Counsel is attached hereto as **Exh. A**.

[3] We requested the BIMCO Guarantee but Owner's counsel refused to produce it.

[4] We requested the documents supporting those statements, again, Onwer's counsel refused to produce it.

[5] We requested proofs of payment but Owner's counsel refused to produce the proofs.

4870-9090-3129 v1

waiver will not be found. *Maritrend, Inc.*, 348 F.3d at 471. Accordingly, rebuttal requires proof of the supplier's actual knowledge that the charterer lacked the ability to bind the vessel. *World Fuel Svcs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507, 522 (4th Cir. 2015). This is shown by an "affirmative communication by the Vessel or her Owner to one of the supplier's employees who has the ability to effect the negotiations and the contract prior to the time the contract is entered into." *O.W. Bunker Malta Ltd. v. M/V Trogir*, 2013 U.S. Dist. LEXIS 19026, 2013 WL 326993, at *3 (C.D. Cal. Jan. 29, 2013) (citing *Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743 (5th Cir.1985)).

6. Second, as noted in *World Fuel Servs. Sing. PTE, Ltd. v. Bulk Juliana M/V*, 822 F.3d 766 (5th Cir. 2016), when a contract's General Terms & Conditions include the application of US law, i.e., the Federal Maritime Lien Act and the charterer has authority to bind the vessel *in rem* for its purchase of bunkers, an enforceable maritime lien is created. The term "General Maritime Law of the United States" included the FMLA and the FMLA provides the exclusive method for a charterer to bind a vessel through the procurement of necessaries without the knowledge of the vessel owner.

7. Here, Plaintiff sold and delivered 800 metric tons of Very Low Sulphur Fuel Oil ("the Fuel") to the Vessel. Copies of the Bunker Confirmation and delivery receipt were provided to the Vessel. The Bunker Confirmation incorporated by reference Plaintiff's General Terms & Conditions of Sale dated July 1, 2022 ("GTCS") which provided in relevant part:

> **14. LIEN**
>
> a) In addition to any security the Seller may have, and as this Contract is entered into and product is supplied upon the faith and credit of the Vessel, it is agreed and acknowledged that a lien over the Vessel is created for the price of the Products supplied together with any interest accrued. The Buyer, if not the Owner of the Vessel, hereby expressly warrants that they have full authority of the Agents/Traders/Owners/Managers/Operators/Charterers to pledge the Vessel in favor of the Seller and that they have given notice of the provisions of this contract to them. The Seller shall not be bound by any attempt by any person to restrict,

limit or prohibit its lien(s) attaching to a Vessel. The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

8. The GTCS also provide, at Clause 19, that the "General Terms and Conditions and each Contract to which they apply shall be governed by the general maritime law of the United States of America and … [i]f there are any gaps in the general maritime law of the United States or if the general maritime law of the United States does not address a disputed issue, the law of the State of New York shall apply." *See*, **R. Doc. 1-5** at p. 13.

9. Moreover, time charterers (Shimsupa) and its agents (AUM) are presumed to have the authority to bind the vessel by the ordering of necessaries. *Monjasa A/S v. M/V Peristil*, No. 3:12-cv-01489-BR, 2013 U.S. Dist. LEXIS 82583, at *16 (D. Or. June 12, 2013).

10. And the ARGOS M's Master possessed at least implied or apparent authority to bind the Vessels when he signed the delivery receipt. *U.S. Oil Trading LLC v. M/V Vienna Express*, 911 F.3d 652, 659 (2d Cir. 2018).

## CONCLUSION

For the reasons stated herein and those within its Motion (**R. Doc. 15**), Three Fifty Markets, Ltd., respectfully requests an Order (1) providing that the Vessel will be released from arrest upon Argos Bulkers, Ltd. providing Plaintiff Three Fifty Markets Ltd. with an LOU in the form as attached hereto as Exh. B attached hereto and (2) setting forth a discovery and briefing schedule for this Court to decide the merits of the dispute.

Respectfully submitted:

*/s/ R. Chauvin Kean*

Bradley J. Schlotterer (#24211)
R. Chauvin Kean (#36526)
**KEAN MILLER LLP**
BankPlus Tower
909 Poydras St., Suite 3600
New Orleans, LA 70112
Telephone  (504) 585-3050
Fax  (504) 585-3051
brad.schlotterer@keanmiller.com
chauvin.kean@keanmiller.com

- and -

William R. Bennett III, (#2513653), *Pro Hac Vice*
Noe S. Hamra, (#4987996) *Pro Hac Vice*
**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY  10020
(212) 885-5000
William.Bennett@blankrome.com
Noe.Hamra@blankrome.com

***Attorneys for Three Fifty Markets Ltd.***


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on March 24, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record or parties who have registered to receive electronic service.

 */s/R. Chauvin Kean*
**R. CHAUVIN KEAN**

4870-9090-3129 v1