**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**THREE FIFTY MARKETS LTD**         *    **CIVIL ACTION**

**VERSUS**                            *    **NO. 23-595**

**M/V ARGOS M, her engines, etc. *in rem***      *    **SECTION L**

**ORDER & REASONS**

Before the Court is a motion by Defendant Argos Bulkers Inc. for Summary Judgment. R. Doc. 94. Plaintiff Three Fifty Markets Ltd. opposes the motion, R. Doc. 105. Defendant filed a reply. R. Doc. 108. After considering the briefing and applicable law, the Court rules as follows.

## I. BACKGROUND

The Court is familiar with the extensive procedural and factual history of this case and will not repeat it here. For a full history, see R. Doc. 89. For the purpose of this motion, the relevant background is as follows.

On February 16, 2023, Three Fifty Markets Ltd. ("Three Fifty"), a commodity trading company domiciled in the United Kingdom, filed a complaint in this Court against the Argos M M/V ("the Vessel"), a Liberian-flagged vessel that was chartered to AUM Scrap and Metals Trading LLC, a company alleged to be organized under the laws of the UAE.[1]

In its complaint, Three Fifty alleges that it sold 800 metric tons of Very Low Sulphur Fuel Oil to Three Fifty on October 11, 2022. R. Doc. 1 at 3. However, Three Fifty alleges, neither AUM nor the Charterer, Shimsupa, has paid Three Fifty for the fuel, leaving a total amount due, including interest, at $663,546.65 as of January 31, 2023. *Id.* at 5. As a provider of "necessaries" to the vessel

---

[1] Though Three Fifty alleges that AUM is the Charterer of the vessel in its complaint, the Vessel indicated that the actual charterer of the vessel is Shimsupa. R. Doc. 60.

within the meaning of the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31342 *et seq*., Three Fifty claims to have an *in rem* maritime lien against the Vessel. In its complaint, Three Fifty sought judgment in the amount of $663,546.65, arrest of the Vessel, sale of the Vessel to pay the judgment due, and other "just and proper" relief. *Id.* at 6.[2]

On February 16, 2023, this Court issued a warrant for the arrest of the Vessel and appointed a substitute custodian. The Vessel was arrested six days later. Case No. 23-623 R. Doc. 18.

On March 21, 2023, Argos Bulkers Inc.[3], as owner of the Vessel, filed a Verified Statement of Right or Interest, R. Doc. 24, and answered the complaint of Three Fifty. R. Doc. 26. In its answer, the owner of the Vessel generally denied liability and stated that Three Fifty had not been the physical supplier of the fuel and, because it did not provide the terms of the physical supplier, it did not state a claim that a lien had been created. R. Doc. 26 at 3.

On August 1, 2023, Three Fifty filed a motion for summary judgment requesting that this Court allow it to execute a maritime lien against the Vessel, which the Vessel opposed. R. Doc. 50; R. Doc. 60. After considering the briefs and oral argument, the Court denied the motion for summary judgment because questions on whether Three Fifty reasonably assumed an individual authorized by the Vessel purchased the fuel remain. R. Doc. 74. On January 2, 2024, the Vessel filed the instant motion for summary judgment. R. Doc. 94.

## II.    PRESENT MOTION

In its motion for summary judgment, the Vessel argues that no one with actual or apparent authority to bind the Vessel purchased the fuel bunkers. R. Doc. 94. It argues that in its charter

---

[2] In addition to this case against the Vessel, PMG Holding SRL filed suit similarly situated to the one at hand. Case No. 23-623, R. Doc. 1. That case was consolidated with this matter and the parties recently reached a resolution. Accordingly, this Court dismissed that matter on January 3, 2024. R. Doc. 96.

[3] Because Argos Bulkers Inc. is the owner and claimant of M/V Argos M, the Court will collectively refer to Argos Bulkers Inc. and M/V Argos M as "the Vessel" for the purpose of this order.

agreement with Shimsupa, there are several no lien clauses that prevent Three Fifty from executing a lien against it. R. Doc. 94-1. It further argues that the instant motion for summary judgment differs from Three Fifty's earlier motion because it only needs to establish that Three Fifty lacks evidence to prove one element of its claim. *Id.* Thus, because the Vessel provides evidence that no one with authority purchased the bunkers in question, it prays that the Court grant its motion. *Id.*

In opposition, Three Fifty argues that the Court has already found that there are factual questions which are to be resolved at trial surrounding this issue. R. Doc. 105. It further argues that the fuel was purchased by an entity with actual or apparent authority. Accordingly, it avers that it is entitled to its maritime lien on the Vessel. In reply, the Vessel emphasizes its earlier arguments to stress that Three Fifty still fails to meet its burden to execute its lien. R. Doc. 108.

## III.   APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## I.   ANALYSIS

The federal maritime lien is a unique security device, serving the dual purpose of keeping

ships moving in commerce while not allowing them to escape their debts by sailing away." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). Under CIMLA, a person providing necessaries to a vessel on the order of the owner, or a person authorized by the owner (1) has a maritime lien on the vessel; (2) may bring a civil action *in rem* to enforce the lien; and (3) is not required to allege or prove that credit was given to the vessel. 46 U.S.C. § 31342.

When this issue was presented to the Court for the first time in Three Fifty's Motion for Summary Judgment, the Court held that the fuel bunkers provided to the Vessel were "necessaries." Nov. 1, 2023 Oral Argument Transcript 7:5. Thus, the Court focuses its brief discussion on whether the Vessel authorized the purchase of the bunkers.

The Court agrees with the Vessel's argument that for it to prevail on summary judgment, it only needs to establish that Three Fifty fails to meet one of the elements of its CIMLA claim. Accordingly, the Court must delve into agency law principles to determine whether the fuel was purchased by an entity with authorization.

Pursuant to 46 U.S.C. § 31341, charterers and their agents are presumed to have the authority to "procure necessaries for a vessel." 46 U.S.C. § 31341(a)(4). Accordingly, maritime law embraces the principles of agency. *West India Indus., Inc. v. Vance & Sons AMC–Jeep*, 671 F.2d 1384 (5th Cir. 1982). "Actual authority is the power of an agent to do an act on behalf of his principal which he is privileged to do because of the agent's manifestations to him." *Chilsan Merch. Marine Co., Ltd. v. M/V K Fortune*, 220 F. Supp. 2d 492, 497 (E.D. La. 2000). Apparent authority is created as to a third person by conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him. Restatement (Second) Agency of § 27. "Apparent authority is distinguished from actual authority because it is the manifestation of the principal to the third

person rather than to the agent that is controlling." *Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985).

Further, the Fifth Circuit has consistently held that maritime liens are enforceable against a non-party to the contract. *World Fuel Servs. Singapore, Pte. Ltd.*, 822 F.3d at 773 ("[W]e must follow this court's [previous] decision. . . which unabashedly enforced, against a non-party to the contract a maritime lien. . .") (citing *Liverpool & London S.S. Prot. & Indem. Ass'n v. QUEEN OF LEMAN M/V*, 296 F.3d 350 (5th Cir. 2002)).

 Much like when the issue was presented to the Court for the first time, it currently holds that there are several factual questions that remain that cannot be reconciled at this stage. The validity of Three Fifty's maritime lien hinges on whether it was reasonable for it to believe AUM had actual or apparent authority to make bunkers purchase on behalf of the Vessel. As stated during oral argument on Three Fifty's previous motion for summary judgment, the Court reminds the parties that "once it's a question of reasonable[ness], that's always a question of fact." Nov. 1, 2023 Oral Argument Transcript 11:17-11:18. The Court further stresses that germane to resolving whether AUM—or any other entity authorized by the Vessel—made the fuel bunker purchase involves taking a closer look at the past practices between the parties, the customs in the industry, as well as the nature and extent of the charterer and its agents' authority. Because this is a factually intensive inquiry, the Court finds that this issue is best resolved at trial and denies summary judgment at this time.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, R. Doc. 94, is **DENIED**.

New Orleans, Louisiana this 7th day of February, 2024.

_____
United States District Judge