UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THREE FIFTY MARKETS LTD.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 23-595** |
| **M/V ARGOS M, her engines, etc.** *in rem* | * | **SECTION L** |

## ORDER & REASONS

Before the Court is Plaintiff Three Fifty Markets, Ltd.'s Motion to Fix an Award of Attorney's Fees and Costs. R. Doc. 141. On May 8, 2024, the Court heard the parties' arguments on the motion and ordered the parties to brief issues presented at the hearing. R. Doc. 142. Defendant M/V Argos M *in rem* through Argos Bulkers, Inc., solely as owner and claimant of M/V Argos M (collectively "Argos") filed its opposition. R. Doc. 143. Three Fifty filed a reply. R. Doc. 144. Considering the briefing, oral argument, and applicable law, the Court now rules as follows.

### I. BACKGROUND

This litigation stems from an unpaid balance for fuel bunkers ("necessaries") that were sold by Plaintiff Three Fifty Markets Ltd., which were delivered and consumed by the Defendant vessel, M/V Argos. The Court held a bench trial in the matter on February 26, 2024. At issue was whether the fuel was sold to an entity authorized by Defendant or its charterer, Shimsupa GmbH.

On April 25, 2024, the Court issued its findings of facts and conclusions of law. R. Doc. 140. Under the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. §34341 *et seq.*, the Court concluded that Three Fifty Markets is entitled to a maritime lien against the defendant vessel. Pursuant to the General Terms and Conditions, the Court first held that U.S. law governed the dispute. It further found AUM had presumptive authority, as defined by CIMLA, to purchase the fuel from Plaintiff. Lastly, the Court held that this authority was not defeated by the

no-lien clauses in the charter party because Defendant failed to show that Plaintiff had actual knowledge of the clauses prior to the transaction. The Court awarded Plaintiff its unpaid balance, interest, and *custodia legis* expenses for a total of $722,641.79. It severed the issue of awarding attorneys' fees, which is presently before the court.

## II.     PRESENT MOTION

In its motion, Plaintiff argues that the Court has previously found that Three Fifty's General Terms and Conditions ("GTCS") governs the instant matter. R. Doc. 140. It further argues that relevant provisions of the GTCS provide that:

> In the event that any sums are overdue from the Buyer and the Seller incurs costs in relation to the collection of such overdue sums then the Buyer shall . . .pay to the Seller upon demand such costs, which shall include . . . lawyer's fees regardless of whether such costs led to the collection of the overdue sums. . .

Trial Ex. 4. Accordingly, Plaintiff seeks attorneys' fees in conjunction with the underlying litigation in the amount of $280,281.75. It argues that this amount is reasonable considering the hours and effort expended by counsel, the rates charged, and the results obtained.

In opposition, Defendant argues that Plaintiff is not entitled to any attorneys' fees because it never pled a claim for such relief in its Verified Complaint. R. Doc. 143. It further argues that the governing law forbids any award of attorneys' fees in an *in rem* maritime lien action. *Id.* at 3-5. Lastly, it avers that even if the law allowed for Plaintiff to recover attorneys' fees, the amount sought is unreasonable. *Id.* at 5-17. Thus, it requests that this Court deny Plaintiff's motion.

In reply, Plaintiff raises three central arguments. R. Doc. 144. First, it argues that it pleaded its claim for attorneys' fees in the Verified Complaint when it alleged that the GTCS governs the dispute. It further argues that federal complaints are notice pleadings such that plaintiffs are not required to expressly plead all claims with specificity, rather Plaintiff's only duty at that time was

to put an adverse party on notice that such claims were present in the GTCS. Alternatively, Plaintiff argues that its claim for attorney's fees was contained within the joint pretrial order and such an order supersedes prior pleadings. Second, Plaintiff reiterates its earlier arguments that it is entitled to attorneys' fees pursuant to the Court's previous findings. Lastly, it argues that the fees charged by its counsel are reasonable.

### III.    LAW AND ANALYSIS

First, the Court addresses how it arrived at this stage of litigation. When issuing its findings of facts and conclusions of law, the Court discussed the applicability of Three Fifty's GTCS on the defendant vessel. R. Doc. 140. Under the heading of "Whether the Choice-of-Law Provision in Three Fifty's GTCS Governs the Instant Dispute," this Court previously held that the specific choice-of-law provision in the GTCS was binding on the Defendant. *Id.* at 10-12. In one paragraph of its analysis, the Court rejected the Defendant's argument that the GTCS was not binding on it because it was not a party to the contract for the underlying transaction. *Id.* at 11. The Court goes on to say "[b]ecause [it] finds that AUM had the authority to purchase the fuel bunkers from Three Fifty Markets for the Vessel's consumption, the Court holds that the Vessel need not be a party to the GTCS for such terms to be binding on it." *Id.* at 12. Presently, the Court acknowledges that this statement is broad and clarifies that when referring to "such terms," it meant the choice of law provision in the GTCS. Such an interpretation flows logically from the rest of the Court's analysis in that section of its Order as it then concludes "the Court finds that the choice of law provision contained within [the GTCS] as valid and binding on the vessel." *Id.*; *see also Triton Marine Fuels Ltd., S.A. v. M/V Pacific Chukotka*, 575 F.3d 409, 413-416 (4th Cir. 2009) (concluding that in an *in rem* maritime lien action, the choice-of-law clause in the underlying contract was enforceable).

In later parts of the opinion, the Court bifurcated the issue of any potential attorneys' fees

award to Plaintiff because the record lacked information necessary for the Court to make a definitive decision on such an award. R. Doc. 140 at 16. It also scheduled a hearing on May 8, 2024, to address the issue. *Id.* at 20. At the hearing, Defendant argued that Plaintiff never pled a claim for attorneys' fees and that such a claim is forbidden by governing law. Accordingly, the Court ordered that the parties brief the matter further, which the Court has since reviewed.

Next, the Court addresses the merits of the issue. Plaintiff argues that it is entitled to attorneys' fees because contractual provisions in the GTCS allow for such recovery. R. Doc. 141. The Court disagrees.

Under general maritime law, federal courts are to apply the "American Rule" which states that "parties must bear their own costs, including attorney's fees, absent a federal statute or enforceable contract to the contrary." *Mark Shiffer Surveyors, Inc. v. SJ-194*, No. 21-99, 2021 3487227 at *1 (E.D. La. Aug. 9, 2021). In this case there is a contract that contains a provision for attorneys' fees. Trial Ex. 4. The question posed in this matter is whether that provision is applicable to an *in rem* proceeding. Further, multiple courts have previously held that CIMLA liens do not cover all the terms of the underlying contract, including provisions providing for payment of attorneys' fees. *See J.P. Provos Maritime S.A. v. M/V Agni*, No. 99-26 c/w 99-29, 99-47, 99-106, 1999 WL 558151 at *2 (E.D. La. 1999) (denying an *in rem* claimant in a maritime lien case an award of contractually-agreed upon attorneys' fees because legal services do not benefit the vessel); *Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 588 (11th Cir. 1995) (finding that attorneys' fees could not be recovered via a maritime lien despite underlying contract including a provision for payment of attorneys' fees); *Triton Marine Fuels Ltd., S.A. v. M/V Pacific Chukotka*, 671 F. Supp. 2d 753, 760-61 (D. Md. 2009) (finding that "terms in the underlying contract for necessaries are not automatically covered by the resulting lien" but that "a maritime lien under the

[CIMLA] appears to only cover the price necessaries themselves plus interest"). Federal courts have reached such holdings in similarly situated cases because *in rem* actions for maritime liens can only operate by law, not contract. *See e.g., Triton Marine Fuels Ltd., S.A.*, 671 F. Supp. 2d at 760-61. Thus, contractual provisions that allow for recovery of attorneys' fees in such actions are not "automatically covered" by the resulting maritime lien because they do not arise as a matter of law. *Id.* The Court finds the 11th Circuit's discussion in *Bradford Marine, Inc. v. M/V Sea Falcon* instructive on this issue. 64 F.3d 585.

In that case, the appellate court strictly dealt with the issue of whether the plaintiff repair company was entitled to attorneys' fees from the defendant vessel pursuant to an underlying contractual provision in an *in rem* maritime lien action. *Id.* After analyzing the nature of *in rem* actions to enforce maritime liens for necessaries, the court reversed the district court's decision and held that the plaintiff was not entitled to attorneys' fees. *Id.* at 588. The Court stressed that the plaintiff's maritime lien arises under U.S. law, specifically CIMLA, and not any contractual provision. *Id.* at 588-89. It further highlighted that "maritime liens are governed by the principle of '*stricti juris* and will not be extended by construction, analogy or inference.'" *Id.* (citing *Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 12 (1920)). With these two guideposts in mind, the court reasoned that the only way the plaintiff could be entitled to attorneys' fees is if they "were (1) "necessaries" and (2) provided to the [defendant vessel]." *Id.* at 589. The court further found that the plaintiff's attorneys services were not "necessaries" as such services did not help the vessel "perform her function." *Id.* To the contrary, such services were provided to the plaintiff instead. *Id.* Accordingly, the Court concluded plaintiff could not recover attorneys' fees in the *in rem* action. Other courts, including ones in this district, have held similarly. *J.P. Provos Maritime S.A*, 1999 WL 558151 at *2 ("[T]he court finds that legal services for the

collection of a debt for necessaries are not for the benefit of the vessel and thus they are not necessaries subject to a maritime lien."); *Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148, 1155 (5th Cir. 1977) (affirming the district court's decision that parties asserting maritime liens for necessaries could not receive attorneys' fees *in rem*).

Here, the Court finds that Plaintiff is not entitled to an award of attorneys' fees. The present case is an *in rem* action. Accordingly, Plaintiff cannot recover attorneys' fees from the defendant vessel despite the language in the GTCS. *Bradford Marine, Inc*, 64 F.3d 585; *J.P. Provos Maritime S.A*, 1999 WL 558151. Plaintiff can only recover attorneys' fees from the vessel if it can prove that such fees were themselves "necessaries" provided to the vessel to help her perform her function. Because federal courts overwhelmingly hold that attorneys' fees are not "necessaries" as defined by CIMLA, the Court cannot grant Plaintiff such an award.

Because the Court finds that Plaintiff is not entitled to attorneys' fees, it need not comment on whether Plaintiff's claim for attorneys' fees was adequately plead.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Three Fifty Markets' Motion to Fix an Award of Attorneys' Fees, R. Doc. 141, is **DENIED**.

New Orleans, Louisiana, this 29th day of May, 2024.

_____
United States District Judge